## Smith, et al. v. Smith.

(Decided September 30, 1915.)

### Appeal from Barren Circuit Court.

1. Usury—Effect of Change in Creditors.—Where a bank that had for several years charged a debtor usurious interest, required him

to pay the debt, and the cashier of the bank as an individual furnished the money to the debtor to enable him to satisfy the bank, in a suit by the cashier on the notes executed to him by the debtor, the debtor could not have subtracted from the notes the usury paid the bank, in the absence of evidence showing that the notes executed to the cashier were really renewals of the bank's indebtedness, or that the arrangement by which the cashier settled the indebtedness was a device or scheme to create a novation.

2.  Parties—Wife Not Necessary Party to Suit to Foreclose Mortgage in Which She Did Not Join.—In a suit to enforce a lien on real estate, created by a mortgage executed by the husband in which the wife did not join, the wife is not a necessary party, as whatever right or interest she may have in the mortgaged land cannot be affected by the judgment directing a sale of the property.

BAIRD & RICHARDSON for appellants.

WHITE & SMITH for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

On July 30, 1912, the appellant, J. N. Smith, executed and delivered to W. B. Smith, the appellee, two promissory notes for twenty-four hundred dolars each, due respectively in six and twelve months from date. These notes were secured by a mortgage lien on certain real estate. The appellant paid several hundred dollars on these notes, and this suit was brought to collect the remainder due and to subject the mortgaged property.

The appellant, admitting the execution of the notes and mortgage, sought by way of counterclaim to purge the notes of a large amount of usury that he alleged had been carried into them. The lower court rejected the defense asserted and gave judgment for the amount claimed.

From the evidence, in which there is little conflict, it appears that the appellant several years before had created debts with the First National Bank of Glasgow, the principal sum of which amounted to $4,800. The notes evidencing these debts were renewed from time to time and interest at the rate of 8% per annum was always charged and collected by the bank, and it is this usury that appellant sought to have deducted from the notes sued on.

In 1912 the national bank examiner informed the Board of Directors of the bank that they must collect these notes, and thereupon the appellee, W. B. Smith, who was the cashier of the bank, told the appellant that

the notes must be paid and that he would lend him the money with which to pay them. To this arrangement the appellant consented and the notes and mortgage were executed. Within a day or two after the execution of the notes, W. B. Smith procured their discount at banks in Cave City and Horse Cave and applied the proceeds of the notes received from these banks to the payment of the debt due by the appellant to the First National Bank, charging an account of the appellant in the First National Bank with the discount taken out of the face of the notes by the banks at which they were discounted. The result of the transaction was that within a couple of days after the execution of the notes the indebtedness of the appellant to the First National Bank was satisfied.

The notes executed by the appellant were made payable to W. B. Smith, and when he accepted these notes he surrendered to appellant the notes of equal amount held by the First National Bank, and this was the consideration received by appellant for the notes executed to Smith. When the banks at Cave City and Horse Cave discounted the notes, which were endorsed by W. B. Smith, they sent checks for the amount payable to "W. B. Smith, cashier," and with these checks and the sixty dollars discount paid by appellant, the indebtedness of appellant to the bank was liquidated.

In the transaction W. B. Smith personally did not pay appellant any money, nor did W. B. Smith personally receive any money from or through the notes executed by appellant. But he did, by endorsing appellant's notes to the banks that furnished the money, become liable as endorser on these notes, and when the notes were not paid at maturity by the appellant, he was compelled to, or at least did, satisfy the banks that held the notes by either paying the banks the money or giving them other securities, and in this way acquired possession of the notes upon which he afterwards brought suit.

On this statement of fact it is argued by counsel for appellant that W. B. Smith acted in this matter for the bank, and that the arrangement was merely a scheme or device for the purpose of enabling the bank to evade liability for the usury that was included in the notes held by the bank. Therefore, it is said that the notes executed by Smith were, in substance and effect, merely renewals of the notes held by the bank, and this being so, appellant had the right to have the notes sued on purged of the

usury contained in the notes that had been executed to the bank.

If, in fact, the notes held by Smith were only a renewal of the bank debt, or if, in fact, the arrangement by which W. B. Smith settled the bank indebtedness was a mere device or scheme to create a novation and thereby relieve the new notes of the usury contained in the bank notes, the judgment of the lower court should be reversed and the appellant allowed to take out of the notes sued on the usury embraced in the notes executed to the bank.

We do not, however, find ourselves able to agree with counsel for appellant that the notes sued on were, in fact, renewals of the bank debt or that the arrangement made by W. B. Smith was merely a device or scheme to avoid the usury law. The evidence shows very clearly that the bank had no connection whatever with the notes executed by the appellant to W. B. Smith. When the bank surrendered to appellant the notes that it held, that discharged his indebtedness to the bank. The bank had no further claim against him on account of these notes. In short, the transaction, so far as appellant and the bank were concerned, was closed when his notes were delivered to him upon the execution of the notes to W. B. Smith.

Nor does the evidence show that this arrangement by W. B. Smith was a scheme or device to evade the usury laws. It is true W. B. Smith was cashier of the bank, but this did not deny him the right as an individual to advance to a debtor of the bank money to satisfy his liability to the bank. Nor did it deny to him the right to transact the business in the manner stated. The bank demanded payment of the money from appellant, and any officer of the bank had the same right as an entire stranger would to advance the money to appellant for the purpose of taking up the bank notes. It is true that W. B. Smith did not draw on his own account for the money to pay the bank, but he had the right to and did secure the money by discounting the notes to other banks, and in discounting these notes he assumed whatever liability attached to his endorsement. In addition to this, the uncontradicted evidence is that when these notes fell due W. B. Smith personally took them up.

We think the weight of the evidence clearly establishes the correctness of the judgment of the lower court.

The further argument is made that the wife of appellant was a necessary party to this suit in view of the

fact that it was sought to subject to the payment of the debt the real estate mortgaged by appellant alone to secure the payment of the debt. If the wife had joined in the mortgage, she would not have been a necessary party to the suit to subject the mortgaged property, as was held in Morgan v. Wickliffe, 115 Ky., 226; but here the wife did not join in the mortgage, and therefore whatever right or interest she had in the land was not affected by the judgment which directed a sale of the whole property mortgaged, as it was indivisible.

The judgment is affirmed.